**Patrick Onyango KOMBUDO,**
**Appellant**

v.

**The STATE of Texas, Appellee.**

**No. 14–03–00738–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

Sept. 23, 2004.

Rehearing Overruled Oct. 21, 2004.

Wayne T. Hill, Houston, for appellants.

Donald W. Rogers, Jr., Houston, for appellees.

Panel consists of Justices YATES, ANDERSON, and HUDSON.

## OPINION

### J. HARVEY HUDSON, Justice.

Appellant, Patrick Onyango Kombudo, was initially charged with the felony offense of delivery of a controlled substance. He was released with bail on the condition that he would subsequently appear in the trial court. When he failed to appear in accordance with the terms of his release, appellant was charged by indictment with felony bail jumping and failure to appear. *See* Tex. Pen.Code Ann. § 38.10 (Vernon 2003). Appellant entered a plea of "not guilty," but after considering the evidence a jury convicted appellant of felony bail jumping and failure to appear as charged in the indictment. The jury subsequently assessed appellant's punishment at confinement in the penitentiary for a term of 7 years and a fine of $7,000.

In seven points of error, appellant contends: (1) the trial court violated his Sixth Amendment right to self-representation; (2) the trial court violated his right to self-representation guaranteed by the Texas Constitution; (3) the evidence was factually insufficient to support his conviction; (4) the evidence was legally insufficient to support his conviction; (5) appellant was harmed by the State's introduction of extraneous offense evidence; (6) the trial court erred in not quashing the indictment; and (7) appellant was harmed by the State's improper introduction of extraneous offense evidence during the punishment phase of his trial.

### Legal Sufficiency of the Evidence

■ The record reflects that on June 20, 2002, appellant obtained a $5,000 bail bond to secure his release from custody in cause number 914,733 which was then pending in the 351st District Court. On June 28, 2002, appellant appeared in the 351st District Court without counsel, and the case was reset until July 16, 2002. On July 16, appellant again appeared without counsel, and the case was reset until August 14, 2002. On August 14, appellant again appeared without counsel, and the case was reset until August 29, 2002. On August 29, 2002, appellant failed to appear, his bond was forfeited, and a warrant was issued for his arrest.

On October 20, 2002, Houston Police Officer John Parker stopped appellant's vehicle because he was wearing no seat belt, he had an expired vehicle registration, he failed to drive in a single lane of traffic, and Officer Parker suspected he was driving while intoxicated. Appellant claimed he had no driver's license or insurance on the vehicle. Officer Parker, however, quickly discovered that appellant had an outstanding warrant, and he placed appellant under arrest.

Appellant testified in his own defense. He explained that he failed to appear in court on August 29, 2002, because he slipped and fell while at a restaurant that day. Appellant said he was transported by ambulance to Memorial Hermann Hospital. After taking pain medication, appellant said he fell asleep on a couch at the hospital and did not leave until 3:00 p.m. Appellant offered medical records establishing his admittance to the hospital at 8:31 a.m. on August 29, 2002. However, appellant admitted that he had access to a telephone while at the hospital and did not attempt to contact the court. Appellant also admitted that he made no attempt after August 29, 2002, to appear in the 351st District Court.

Appellant contends the evidence is legally insufficient because it "is a defense to prosecution [for bail jumping and failure to appear] that the actor had a reasonable excuse for his failure to appear in accordance with the terms of his release." Tex. Pen.Code Ann. § 38.10(c) (Vernon 2003).

Appellant also argues that he had no obligation to appear in the 351st District Court after his bond had been forfeited and a warrant issued for his arrest. Appellant cites no authority for this contention, and we reject it for the following reasons.[1]

■ First, the trial court has the power to reinstate a bond after it has been forfeited. *See Queen v. State,* 842 S.W.2d 708, 712 (Tex.App.-Houston [1st Dist.] 1992), *aff'd,* 877 S.W.2d 752 (Tex.Crim.App.1994); *Meador v. State,* 780 S.W.2d 836, 836–37 (Tex.App.-Houston [14th Dist.] 1989, no pet.). Thus, appellant could have sought reinstatement if he had promptly notified the trial court of his accident.

Second, by the terms of his bail bond, appellant was obliged to make his personal appearance before the 351st District Court or any court to which the cause might be transferred "for any and all subsequent proceedings that may be had relative to [the charge of possession of a controlled substance], and there remain from day to day and term to term of said courts, until discharged by due course of law." Here, the pending charge for which appellant was on bail was not discharged by due course of law by his failure to appear. Accordingly, appellant had a continuing obligation to report to the trial court even after his bond was forfeited.

Third, appellant is afforded a defense to prosecution only if he has "a reasonable excuse for his failure to appear." We do not construe the statute to mean that appellant need only have a "reasonable excuse" at the precise moment his name was called in the trial court. Rather, we find that a "reasonable excuse" must encompass the entire time appellant was absent from the court, *i.e.,* from the time his name was called in the courtroom to the time he was ultimately apprehended or appeared in court.

Accordingly, we find the evidence is legally sufficient to support the judgment. Appellant's fourth point of error is overruled.

### Right to Self–Representation

■ After appellant was arrested and returned to the trial court, the district judge appointed counsel for appellant. However, on March 28, 2003, appellant filed a pro se motion entitled "Motion to Dismiss Court Appointed Attorney and Appoint a New Counsel to Act on Behalf of Defendant." In this motion, appellant never mentioned any desire to proceed pro se; he merely requested that new counsel be appointed to defend him. However, a criminal defendant is not entitled to appointed counsel of choice. *Dunn v. State,* 819 S.W.2d 510, 520 (Tex.Crim.App.1991). Accordingly, the trial judge denied appellant's motion immediately prior to trial. Appellant then made a request to represent himself:

> THE COURT: All right, we're here on Cause No. 928748, State of Texas versus Patrick Kombudo. Mr. Kombudo has been indicted for the felony of-

---

1. In evaluating a legal sufficiency challenge, we view the evidence in the light most favorable to the verdict and determine whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319 n. 12, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Garrett v. State,* 851 S.W.2d 853, 857 (Tex.Crim.App.1993). We will not over- turn the verdict unless it is irrational or unsupported by proof beyond a reasonable doubt. *Matson v. State,* 819 S.W.2d 839, 846 (Tex.Crim.App.1991). If any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, the evidence is legally sufficient to sustain the conviction. *McDuff v. State,* 939 S.W.2d 607, 614 (Tex.Crim.App.1997).

fense of bail jumping. There is a jury in the hallway and it's time to go to trial.

Mr. Kombudo filed a motion to dismiss Mr. Moore from this case. That motion will be denied. We're going to trial.

MR. MOORE [appellant's counsel]: Judge, can I get him on the record?

I did bring you in two sets of business suits for you to look at this morning to wear?

THE DEFENDANT: Yes.

MR. MOORE: And you did look at them and decided you want to go to trial in your street clothes, what you have on—you want to wear what you have on?

THE DEFENDANT: I would like to go to trial with what I have on.

*Sir, I cannot go pro se?*

THE COURT: No, we're going to trial.

(Emphasis added). Thereafter, a jury was selected, instructed to return on Monday morning, and released for the weekend.

On Monday morning, a visiting judge was assigned to conduct the trial. Before the jury was sworn, appellant approached the visiting judge and again asked to be allowed to represent himself:

THE DEFENDANT: Excuse me, Your Honor.

THE COURT: Yes, sir.

THE DEFENDANT: May I approach the bench? I'd like to show you a letter, please, Your Honor.

THE COURT: I beg your pardon?

THE DEFENDANT: I'd like to show you this letter, Your Honor.

THE COURT: All right, sir.

\* \* \*

THE COURT: Is this something that you have seen?

MS. COOK [the State's attorney]: Yes.

MR. MOORE: This is my letter to him about what to do with this case. You have not seen this one.

THE COURT: I'm not going to read it without the prosecution reading it and I'm not sure that you want the prosecution reading a letter that your lawyer has written to you.

THE DEFENDANT: It shows a conflict of interest on my lawyer in this case. He wrote me a letter saying that he does not—

THE COURT: I'm not going to look at that letter, sir. That would be a violation of the attorney-client privilege because I would have to show the prosecution that letter.

THE DEFENDANT: I don't have any objection, Your Honor, to show the prosecution. I do not want the attorney representing me in the case because he has a conflict of interest. He has written to me saying that I do not have a defense. And that does not make any sense to me. *I would like to proceed pro se and I'm hoping to work with the jury.*

THE COURT: Well, sir—

MR. MOORE: Judge, just for the Court's information, *Judge Ellis has already denied a motion for him to proceed pro se on Friday.*

THE COURT: Very good.

THE DEFENDANT: I did not include this in the motion, though. This is a new letter that I just got.

MR. MOORE: He had that letter Friday and mentioned it to the Judge.

THE COURT: I'd like to have the Prosecutor see the letter. You're making a big mistake, sir.

THE DEFENDANT: I have been trying to make this known but he put it in a letter form.

THE COURT: You're making a big mistake.

THE DEFENDANT: I am aware, ma'am.

THE COURT: All right.

MR. MOORE: The typing—he has written all over it. The typing is mine.

MS. COOK: Thank you, Your Honor.

THE COURT: I'll look at it.

All right, sir. Mr. Kombudo?

THE DEFENDANT: Yes, ma'am.

THE COURT: I have known Mr. Moore for probably two decades, worked with him frequently when I was on the bench as a presiding Judge. I appointed him frequently because he always had the best interest of his clients in his mind and heart and he continually did an excellent job for his clients.

And when his clients listened to his advice, paid attention to his advice, it was always, always without exception in their best interest.

*Judge Ellis has denied your request to represent yourself and Judge Ellis is a very experienced Judge and I certainly agree with his ruling.*

We're going to trial. We're going to bring the jury in. I want to caution you, sir, that you must not make any kind of outburst during the trial, no disturbance of any kind. It's very important that you pay attention to me.

[The defendant is carefully admonished regarding the court's power of contempt.]

So, I want you to preserve the dignity of this Court by behaving in a dignified and respectful manner. And at this point do you understand me?

THE DEFENDANT: I understand. *I don't have the right to represent myself; is that correct?*

THE COURT: *That's correct. Judge Ellis has ruled on that issue.* So, we're now going to trial and Mr. Moore is representing you. And you're very fortunate that Mr. Moore was appointed for you.

So, with that, we're going to go to trial and you may be seated at this time. (Emphasis added).

In his first and second points of error, appellant contends the trial court violated his right to self-representation under both the federal and state constitutions. We agree.

■ The Sixth Amendment of the United States Constitution provides that in all criminal prosecutions, the accused shall enjoy the right "to have the assistance of counsel for his defense." U.S. Const. amend. VI. As applied to the states via the Fourteenth Amendment, the Supreme Court of the United States has held that the Sixth Amendment guarantees to the accused the right to self-representation.

The Sixth Amendment does not provide merely that a defense shall be made for the accused; it grants to the accused personally the right to make his defense. It is the accused, not counsel, who must be 'informed of the nature and cause of the accusation,' who must be 'confronted with the witnesses against him,' and who must be accorded 'compulsory process for obtaining witnesses in his favor.' Although not stated in the Amendment in so many words, the right to self-representation—to make one's own defense personally—is thus necessarily implied by the structure of the Amendment. The right to defend is given directly to the accused; for it is he who suffers the consequences if the defense fails.

*Faretta v. California,* 422 U.S. 806, 819–820, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).

We recognize the right to self-representation is not absolute. *Munkus v. Furlong,* 170 F.3d 980, 984 (10th Cir.1999). For example, if a defendant first asserts his right to self-representation after trial has begun, the right may have been waived. The decision at that point whether to allow the defendant to proceed pro se at all or to impose reasonable conditions on self-representation rests in the sound discretion of the trial court. *United States v. Singleton,* 107 F.3d 1091, 1099 (4th Cir.), *cert. denied,* 522 U.S. 825, 118 S.Ct. 84, 139 L.Ed.2d 41 (1997). Moreover, the defendant's request to conduct his own defense must be unequivocal and not a tactic to secure delay in the proceedings. *United States v. Smith,* 780 F.2d 810, 811 (9th Cir.1986). Further, the right of self-representation is not a license to abuse the dignity of the courtroom, and the trial judge may terminate self-representation by a defendant who deliberately engages in serious and obstructionist misconduct. *Faretta,* 422 U.S. at 834, 95 S.Ct. 2525.

Here, appellant made his initial request for self-representation on the eve of trial immediately prior to the commencement of voir dire. He made a second request after voir dire, but before the jury was sworn. The State contends the second request was not timely. However, if "there is to be a Rubicon beyond which the defendant has lost his unqualified right to defend pro se," it is at the beginning of the defendant's trial "when the jury is empaneled *and sworn.*" *Chapman v. United State,* 553 F.2d 886, 894 (5th Cir.1977) (emphasis added). Thus, appellant's second request for self-representation was timely. However, even if we were to hold that the second request was not timely, there can be no question that his first request was "before trial" and, thus, time-

ly. Moreover, there was nothing equivocal about appellant's desire to proceed pro se. Finally, nothing in the record suggests appellant sought a continuance or other delay in the proceedings.

It is undeniable that in most criminal prosecutions defendants could better defend with counsel's guidance than by their own unskilled efforts. But where the defendant will not voluntarily accept representation by counsel, the potential advantage of a lawyer's training and experience can be realized, if at all, only imperfectly. To force a lawyer on a defendant can only lead him to believe that the law contrives against him. *Faretta,* 422 U.S. at 834, 95 S.Ct. 2525. Here, we find the trial court denied appellant's right of self-representation. Moreover, since the right of self-representation is a right that, when exercised, usually increases the likelihood of a trial outcome unfavorable to the defendant, its denial is not amenable to "harmless error" analysis. The right is either respected or denied; its deprivation cannot be harmless. *McKaskle v. Wiggins,* 465 U.S. 168, 177, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984).

Finally, the Texas Constitution is more explicit than the Sixth Amendment. It provides that in all criminal prosecutions the accused shall "have the right of being heard by himself or counsel, or both." TEX. CONST. art. I, § 10. The request to proceed pro se is timely if it is asserted before the jury is empaneled. *See McDuff v. State,* 939 S.W.2d 607, 619 (Tex.Crim.App.1997). The right of self-representation must be honored so long as the assertion of the right is unconditional and not asserted to disrupt or delay the proceedings. *Ex parte Winton,* 837 S.W.2d 134, 135 (Tex.Crim.App.1992). Moreover, a defendant's clear and unequivocal request for self-representation, followed by an unmistakable denial of that

right, is sufficient to preserve the alleged error. *See Funderburg v. State*, 717 S.W.2d 637, 642 n. 6. (Tex.Crim.App.1986).

Appellant's first and second points of error are sustained. Accordingly, we need not address appellant's remaining points of error. The judgment of the trial court is reversed and the cause is remanded for a new trial.